UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                        )
NADIA JEAN MICHEL,      )
         Petitioner,    )
v.                      )              Civil Action No. 04-10276-RWZ
                        )
BARBARA GUARINO,        )
         Respondent.    )
_____)
```

## RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE PETITION FOR HABEAS CORPUS

Respondent Barbara Guarino submits this memorandum of law in opposition to the petition for habeas corpus filed by petitioner Nadia Jean-Michel. The petition should be denied because the petitioner has failed to demonstrate that the state courts' adjudication of her claims resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court.

## I.    The State Court Adjudication

On December 22, 1997, a Plymouth County grand jury returned 11 indictments with 47 counts against petitioner. Supplemental Answer at Tab D, pp. A9-A52 [hereinafter "Supp. Ans. at __:__"]. On June 5, 2000, the Commonwealth moved for trial on 27 of these counts: insurance fraud (in violation of M.G.L. c. 266, § 111A); eight counts of motor vehicle insurance fraud (M.G.L. c. 266, § 111B); workers' compensation fraud (M.G.L. c. 152, § 14); eight counts of larceny over $250 (M.G.L. c. 266, § 30); three counts of attempted larceny over $250 (M.G.L. c. 274, § 6); perjury (M.G.L. c. 268, § 1); welfare fraud (M.G.L. c. 18, § 5B); two counts of obtaining and possessing a false driver's license (M.G.L. c. 90, § 24B); and two counts of failure to file tax returns (M.G.L. c. 62C, § 73(c)). Supp. Ans. at E:SA3.

Petitioner's trial began on June 5, 2000, before Superior Court Judge Patrick Brady and a jury. Supp. Ans. at D:A7. At the close of the Commonwealth's case, the court entered a finding of not guilty as to three indictments: one count of motor vehicle insurance fraud, one count of attempted larceny over $250, and one count of obtaining and possessing a false driver's license. *Id*. Judge Brady denied petitioner's motion for a required finding on all other counts. *Id*. The trial continued on the remaining counts, and on June 13 the jury returned with a verdict of guilty on all remaining charges. *Id*. The court sentenced the petitioner to two concurrent three to five year terms of imprisonment for larceny and larceny from the Commonwealth, and imposed concurrent two year sentences of imprisonment on the insurance fraud and attempted larceny indictments. Supp. App. at E:SA7-8. For perjury, the petitioner received a further three to five year sentence commencing after her sentence for larceny from the Commonwealth, Supp. App. at D:A7; concurrent with the perjury sentence, the court imposed one-year sentences of imprisonment for the remaining convictions for welfare fraud and falsification of an operator's license. Supp. App. at E:SA7-8.

Petitioner appealed to the Massachusetts Appeals Court, raising four grounds: 1) that she was denied her right to effective assistance of counsel by a remark her attorney made during closing; 2) that the trial court denied her a fair sentencing hearing; 3) that the trial court erred by denying her motion for required finding of not guilty on the perjury indictment; and 4) that even if properly given to the jury, a new trial on the perjury charge was required. Supp. Ans. at D:1. The Massachusetts Appeals Court affirmed the judgment of conviction in an unpublished opinion on January 15, 2003. Supp. Ans. at F:1. Petitioner filed an Application for Further Appellate Review in the Massachusetts Supreme Judicial Court on February 21, 2003, raising essentially the same four issues. Supp. Ans. at A:1. The application was denied on April 2, 2003. *Id*.

2

II.    **The Factual Findings**

The factual findings of the state courts are presumptively correct.  28 U.S.C. § 2254(e)(1).

*See Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir. 2002); *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir.

2001); *Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000).  This presumption of correctness extends

to inferences drawn by the state courts from those factual determinations, *Parke v. Raley*, 506 U.S.

20, 35 (1992), to any factual findings implicit in the state courts' rulings, *Weeks v. Snyder*, 219 F.3d

245, 258 (3d. Cir.), *cert. denied*, 531 U.S. 1003 (2000), and to facts found by both the appellate and

trial courts.  *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002).  The presumptive correctness of state

court factual determinations may only be overcome by clear and convincing evidence.  28 U.S.C.

§ 2254(e)(1).

The Appeals Court made the following findings regarding the sufficiency of the perjury

charge:

> The perjury indictment arose out of certain answers given by the defendant, under oath, in regard to a fire that had occurred at the defendant's beauty salon on March 22, 1994.  The defendant filed a claim for loss and damage to business and personal property because of the fire and for resulting loss of business income with Aetna Insurance Company (Aetna).
>
> Aetna retained an attorney to examine the defendant under oath for purposes of determining whether her claim should be paid or whether there may be a basis for showing that the insurance policy had been breached by the insured.  The examination took place on June 22, 1994. As a result of that examination, the claim was denied and the defendant brought an action in the District Court against Aetna for failure to pay her claim.
>
> While the defendant's action was pending, she was deposed by Aetna on November 19, 1996. According to the evidence at trial, under oath, the defendant gave false answers to questions asking (1) the defendant's date of birth and social security number; (2) the extent of her earned income after the fire; (3) whether employees of the defendant's beauty salon were licensed; and (4) how many prior and subsequent insurance claims the defendant had made.

Supp. Ans. at F:2-3.

3

As to the ineffective assistance of counsel claim, the Appeals Court found that:

In this case, the defendant was not denied her opportunity to present a closing argument . . . . Nor was this a case where defense counsel argued that there was no issue of guilt.

The defendant focuses her ineffective assistance claim on one sentence in her counsel's closing argument and argues that it amounted to a constructive denial of counsel. The remark is as follows:

Cases get tried for many reasons, many reasons. Sometimes it's because the issues are of guilt or innocence. Sometimes there are other considerations.

Defense counsel followed that remark with a statement urging the jurors to find reasonable doubt and to acquit the defendant. The remark was ambiguous but it neither amounted to an abandonment of counsel nor conceded guilt.

Supp. App. at F:6.

## III. The Appeals Court Decision Was Neither Contrary to nor an Unreasonable Application of Clearly Established Federal Law, as Determined by the United States Supreme Court.

The instant petition raises two grounds for relief. Ground one alleges that there was insufficient evidence of perjury before the jury to permit a conviction on that charge. Specifically, petitioner argues that there was insufficient evidence from which the jury could reasonably have concluded that any of petitioner's lies in her deposition were material to her civil suit against Aetna. Ground two claims that petitioner was abandoned by trial counsel because, during his closing, he remarked: "Cases get tried for many reasons, many reasons. Sometimes it's because the issues are of guilt or innocence. Sometimes there are other considerations." Petitioner contends that this statement was an admission of guilt, and therefore that the Appeals Court was required to conclusively presume that her defense was irretrievably harmed. Both claims fail. The Appeals Court identified the correct standard for a sufficiency of the evidence challenge and properly applied that standard to the facts of the case. Petitioner's claim that counsel's statement was an admission

4

of guilt is factually incorrect, and does not, in any case, present the kind of ineffectiveness claim for which no showing of prejudice is required.

### A. Standard of Review

Habeas corpus review of claims previously adjudicated by state courts is both limited and highly deferential:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This "highly deferential standard for evaluating state-court rulings" reflects the overarching structure of the federal habeas corpus scheme, which vests "primary responsibility" for evaluating federal law claims raised in criminal trials in the state courts, courts which must be presumed in habeas corpus courts to know and follow the law. *Woodford v. Visciotti*, 537 U.S.19, 24, 27 (2002) (per curiam). Thus, as the Supreme Court has repeatedly emphasized, it is not sufficient to warrant habeas corpus relief that the state court's decision was erroneous or incorrect. *Id*. at 27; *Williams v. Taylor*, 529 U.S. 362, 412 (2000). It is not even sufficient that the state court "failed to apply" Federal law clearly established by the Supreme Court, *Early v. Packer*, 537 U.S. 3, 10 (2002) (per curiam), or that the state court committed "clear error," or that the reviewing court is of the "firm conviction" that the state court's ruling was erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

Rather, federal courts must decline to intervene to disturb state court judgments unless petitioner demonstrates that her claim falls into one of the narrowly drawn categories set forth in the statute. "Under § 2254(d)(1), the writ may only issue if one of . . . two conditions is satisfied . . . ." *Williams*, 529 U.S. at 412. "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. *Id*. at 412-13. The analysis under the "unreasonable application" clause is distinct, and relief is available only if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. To be entitled to relief under the latter clause, the burden is on petitioner to show that the state court decision applied the clearly established law in an "objectively unreasonable" manner. *Id*. at 409-10. Since, "[a]pplying a general standard to a specific case can demand a substantial element of judgment," "[t]he more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." *Yarborough v. Alvarado*, 124 S. Ct. 2140, 2149 (2004). The clearly established law that is relevant to the analysis under § 2254(d)(1) is limited to the holdings of United States Supreme Court cases extant at the time of the state court decision, and does not include the dicta of such cases. *Id*. at 2147; *Williams*, 529 U.S. at 412.

### B.    The Appeals Court's Decision That There Was Sufficient Evidence to Support the Perjury Conviction Was Not Contrary to or an Unreasonable Application of *Jackson v. Virginia.*

Petitioner claims that there was not enough evidence concerning the precise nature of her claims in the civil suit against Aetna for the jury to decide that her lies were material to that suit. "The relevant question is whether, after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original). Whether the *Jackson* test has been met is determined with reference to the substantive elements of Massachusetts perjury law. *See id.* at 324. There was more than enough evidence to meet this standard, and the petitioner does not contend that the Appeals Court misidentified or unreasonably applied the appropriate constitutional standard for sufficiency of the evidence.

The Appeals Court did not come to the opposite conclusion of the Supreme Court on a question of law, or decide this case differently from the Supreme Court on materially indistinguishable facts. *Williams*, 529 U.S. at 412.  Although not mentioning *Jackson* by name, the Appeals Court applied the proper standard for deciding the sufficiency question.  Not only did the court rely primarily on *Commonwealth v. D'Amour*, 704 N.E.2d 1166, 1180 (Mass. 1999), which both recites the *Jackson* standard and cites the case, the Appeals Court also explicitly incorporated the Commonwealth Brief's analysis of the perjury issue, which cited the long-standing Massachusetts sufficiency standard, *Commonwealth v. Latimore*, 393 N.E.2d 370 (Mass. 1979), which is equivalent to the *Jackson* rule.  *Latimore*, 393 N.E.2d at 374-75.  Supp. App. at E:29.  It does not matter that the Appeals Court did not specifically cite to *Jackson*, *see Early v. Packer*, 537 U.S. 3, 14 (2002), and, in any case, petitioner does not suggest that the Appeals Court rejected the established Massachusetts and federal sufficiency of evidence standard in this case.  The court recognized and applied the proper legal standard, and its decision is not contrary to *Jackson*.

Nor is the Appeals Court's decision an unreasonable application of Supreme Court precedent.  A state court decision is unreasonable only when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the . . . case."

*Williams*, 529 U.S. at 407. Petitioner has failed to meet her burden of showing that the Appeals Court applied the *Jackson* decision in an "objectively unreasonable manner." *Id*. at 413.

In Massachusetts, perjury is committed by "[w]hoever, being lawfully required to depose the truth in a judicial proceeding or a proceeding in a course of justice, wilfully swears or affirms falsely in a matter material to the issue or point in question . . . ." M.G.L. c. 268, § 1. For a false statement to be material it need only "tend in reasonable degree to affect some aspect or result of the inquiry." *Commonwealth v. McDuffee*, 398 N.E.2d 463, 467 (Mass. 1979). This standard reflects the long-established rule that a matter is material even if it only tends to bear on an issue in the proceeding indirectly or circumstantially. *See e.g., Commonwealth v. Pollard*, 53 Mass. 225, 230, 15 Met. 225, 230 (1847); *Commonwealth v. McCarthy*, 26 N.E. 140, 141 (Mass. 1891).

There was more than enough evidence in this case for a reasonable fact finder to determine that petitioner's false statements about her birthdate, social security number, amount of lost income, licensure of her employees, and prior insurance claims were material to her suit against Aetna challenging its denial of her insurance claims. Petitioner's sufficiency claim is grounded on the fact that the Commonwealth did not introduce the complaint in the civil action to show how petitioner's false statements at the deposition were material. Pet. Mem. at 6. This argument rests on an excessively cramped concept of materiality and, more significantly, ignores the ample, direct evidence the Commonwealth did present on this point. Rather than require the jury to deduce the relevance of petitioner's false deposition answers from the legal pleadings, as petitioner would require, the prosecution proved materiality directly, by calling the attorney who took the deposition for Aetna and having him explain why each of the questions he asked was important to the outcome of the case. Austin Freeley testified that he asked about petitioner's background information, prior employment history, financial status, her explanation of the loss she had suffered and any other

8

claims involving other insurance companies in part to establish petitioner's basic credibility, which Mr. Freeley testified was a "key factor[] in establishing the validity of the claim, the strength of the claim." Tr. V:61.[1]  The witness then went on to tie each of the areas of his inquiry at the deposition to specific defenses Aetna might have sought to raise to petitioner's claim of failure to pay.  Mr. Freeley testified that the question regarding licensing of petitioner's employees was relevant because "the insurance company would not issue insurance to an unlicensed establishment." Tr. V:62.  The attorney testified that the questions regarding the income generated by the business, as well as petitioner's employment and income in the period after the fire were relevant to show possible financial distress as a motive for fabricating a loss and were relevant to Aetna's potential defense that petitioner was able to mitigate damages. Tr. V:63-65.  Finally, Mr. Freeley explained that each of the questions which appeared on the insurance application that he went over with petitioner at her deposition was important to the case because if petitioner had failed to answer truthfully on her application, "Aetna would have a defense to not paying this claim at all." Tr. V:66.

The testimony adduced here suffices to meet the minimal evidentiary standard for sending a materiality question to the jury.  Contrary to petitioner's suggestion, neither Massachusetts nor federal law require the prosecution to prove the technical legal elements involved in a proceeding in order to establish materiality.  To the contrary, materiality is a broad, commonsense concept, that includes even issues such as witness credibility: "The word 'material' and the idea of materiality are commonly understood and every day judgments on a variety of subjects are made upon a layman's sense of materiality." *Commonwealth v. McDuffee*, 398 N.E.2d 463, 469-70 (Mass. 1979) (internal citations omitted); *see also United States  v. Scivola*, 766 F. 2d 37, 44 (1st Cir. 1985) (Under federal

---

[1]Upon duplication, the relevant transcripts will be submitted to the Court.

perjury law, "the test for materiality is a broad one. . . .  The statement need not be material to any particular issue in the case, but rather may be material to any proper matter of the jury's inquiry, including the issue of credibility."); *Commonwealth v. Johnson*, 55 N.E.2d 804 (Mass. 1900) (false denial of prior conviction material perjury because lie was material to witness's credibility).  Even if the Commonwealth had not produced evidence explicitly tying petitioner's untrue deposition testimony to particular defenses available to Aetna in that proceeding, it takes little more than the jury's lay  knowledge of what insurance claims involve to infer that petitioner's flat untruths about her identity, her personal and business financial status, and dealings with other insurance companies would "tend in reasonable degree to affect some aspect" of litigation about failure to pay an insurance claim.

In the light most favorable to the Commonwealth, the jury could rationally have believed the uncontested testimony that petitioner's egregiously false deposition testimony was  material to the civil suit she filed against Aetna.  The Appeals Court applied the proper standard, correctly summarized the facts pertinent to this issue, and made an objectively reasonable determination of the sufficiency question.  Ground one of the petition provides no basis for relief.

C.    **The Appeals Court Decision Rejecting Petitioner's Ineffective Assistance of Counsel Claim Was Not Contrary to or an Unreasonable Application of Clearly Established Supreme Court Case Law.**

Petitioner suggests that a brief, ambiguous remark by defense counsel in his closing argument renders her convictions unconstitutional, even though petitioner does not even suggest that the outcome of the trial might have been different if counsel had not made the statement.  At the end of his closing, petitioner's counsel said:

> I would like to thank you on behalf of my client, because it's been over a week doing this.  We both observed you every day taking notes and being attentive.  And we appreciate your time and your effort in doing this.

> *Cases get tried for many reasons, many reasons. Sometimes it's because the issues are of guilt or innocence. Sometimes there are other considerations.*
>
> So I would ask you in this case that after you have reviewed the evidence, if you feel that this defendant, if you have a reasonable doubt about any element, that you say so in the jury room. And that you do your best to convince your fellow jurors of that doubt. And if you do have a doubt, I'm going to ask you to vote to acquit her.

Tr. (VI) 149.  Petitioner suggests that the highlighted language in the above statement constitutes an admission of guilt, and that such an admission constitutes a denial of the right to counsel guaranteed by the Sixth Amendment.

The test for the denial of the effective assistance of counsel is the two prong test described in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a defendant to prove that counsel's performance fell below an objective standard of reasonableness and that there was a reasonable probability that, except for the unprofessional mistakes of counsel, the result of the trial would have been different. *Mickens v. Taylor*, 535 U.S. 162, 166 (2002).  Since petitioner cannot demonstrate that the result of the trial would have been different but for this remark (indeed petitioner's theory is that counsel conceded guilt because the evidence was so overwhelming that she should have pleaded guilty, Pet. Mem. at 7), petitioner argues that the Appeals Court should have presumed prejudice for reasons discussed by the Supreme Court in dicta in *United States v. Cronic*, 466 U.S. 648 (1984).  The Appeals Court rejected this contention because petitioner's counsel had not conceded guilt–to the contrary, counsel had urged the jury to find reasonable doubt and to acquit. Supp. App. at F:6.

The Appeals Court's decision was neither contrary to nor an unreasonable application of *Cronic*.  In that case, the Supreme Court analyzed a test fashioned by the court of appeals which permitted an inference that defendant's Sixth Amendment rights had been violated, even in the absence of any proof of deficient performance or prejudice.  466 U.S. at 652-53.  In rejecting this

approach, the Court noted that the court of appeals had not found "a breakdown in the adversarial process," and (arguably) implied that such a breakdown might justify relief, even in the absence of a showing of prejudice.  *Id*. at 662.

The Supreme Court has made clear, however, that any "breakdown of the adversarial process" exception to the *Strickland* prejudice rule is extremely narrow, and is limited, at most,  to situations where counsel has completely failed to subject the government's case to adversarial testing.  *Bell v. Cone*, 535 U.S. 685, 697 (2002).  Even demonstrable errors by counsel do not preclude a meaningful testing of the case. *Cronic*, 466 U.S. at 656. For example, when counsel waives her final argument in a sentencing proceeding, it does not fit this exception because counsel was not ineffective throughout the entire sentencing proceeding, only at specific points. *Bell*, 535 U.S. at 697. A case where counsel entirely fails to subject the state's case to adversarial testing is a difference of kind, not of degree. *Id*.  The First Circuit has followed this analysis and established a bright-line rule that "attorney error, even when egregious, will almost always require analysis under *Strickland*'s prejudice prong."  *Scarpa v. DuBois*, 38 F.3d 1, 14 (1st Cir. 1994).

In the instant case, it cannot be said that counsel for petitioner *entirely* failed to subject the Commonwealth's case to adversarial testing, even in the limited sphere of the closing argument. Defense counsel made a vigorous closing statement. He repeatedly instructed the jurors to look at each element of every count of the indictment one at a time and he highlighted the high burden of the government in proving every element. Tr. VI:144, 145, 147, 148, 149. Counsel questioned the credibility of the government's witnesses, Tr. VI:146-47, and made a strong plea for the finding of reasonable doubt. Tr. VI: 149.  Petitioner's allegation of ineffectiveness pertains, at most, to one vague statement made by counsel during closing,  not to his performance throughout the entire argument, much less the entire proceeding. Petitioner's claim does not implicate the arguable *Cronic*

12

exception to the general rule that prejudice must be shown to state a Sixth Amendment claim, and

the Appeals Court did not contradict or unreasonably apply *Cronic* in refusing to presume

prejudice.[2]  Ground two of the petition fails.

**Conclusion**

For these reasons, respondent respectfully requests that the petition for habeas corpus be

denied.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

/s/ David M. Lieber
David M. Lieber (BBO # 653841)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, MA 02108
(617) 727-2200 ext.2827

Dated: July 30, 2004

---

[2]Moreover, even if counsel had admitted petitioner's guilt in closing, prejudice would not be presumed.  Petitioner relies upon *United States v. Swanson*, 943 F.2d 1070, 1074-76 (9th Cir. 1991), for the proposition that a closing argument concession of guilt creates a presumption of prejudice.  The rationale of *Swanson* has been explicitly rejected by the First Circuit, which held that the Ninth Circuit had "misperceive[d] the rationale underlying the *Cronic* exception." *Scarpa v. DuBois*, 38 F.3d 1, 31-32 (1st Cir. 1994).